CASE 81.—ACTION BY CHARLES T. WARREN'S ADMR. AGAINST NANNIE WARREN AND OTHERS TO SETTLE THE DECEDENT'S ESTATE.—October 15.

## Warren's Admr. v. Warren, &c.

Appeal from Hardin Circuit Court.

WEED S. CHELF, Circuit Judge.

From the judgment plaintiff appeals. Reversed.

Homestead—Right of Widow and Children.—Under Ky. Stats. 1903, section 1707, providing that a homestead shall be for the use of the widow, so long as she occupies it, and of the unmarried children of the deceased husband till the youngest is of age, but said land may be sold, subject to the right of the widow and children, if necessary to pay decedent's debts, the widow and children are entitled to such homestead as deceased, if living, could have claimed under sections 1702, 1703, 1705, so that, the homestead right being an indivisible property of greater value than $1,000, the whole property may be sold for decedent's debts, and $1,000 of the proceeds be set aside for the use of the widow and children for such time as they would be entitled to use of a homestead.

Warren's Admr. v. Warren, &c.

S. H. BUSH and D. M. COOPER for appellants.

It was not the intention of the Legislature in enacting section 1707 to give the widow and infant children a greater interest in the homestead than the deceased husband and father had, but merely to give them a homestead undisturbed by creditors of deceased.

In the case at bar, injustice is done to the creditors of deceased in giving the widow and children the use of a house and lot worth $3,000 or more until the youngest child, now five years of age, shall attain her majority. This being the chief resource of the estate there would be very little, if anything, left to pay the creditors amounting to over $6,000.

### AUTHORITIES CITED.

Ky. Statutes, section 1702, 1705, 1707; Sanberry v. Sims, 79 Ky. 527; Schnabel, &c., v. Schnabel, &c., 108 Ky. 536; Higgins, &c., v. Higgins, 78 S. W. 1123; Hanna's Assignees v. Gay, &c., 78 S. W. 915; Meyers Gdn. v. Meyers Admr., 89 Ky 442; Clay's Gdn. v. Wallace, 76 S. W. 388.

JAMES C. POSTON, attorney for appellees.

### POINTS AND AUTHORITIES.

1. Even if case is reversed no costs should be had against appellees. (Ky. Stats., section 891.)

2. The Homestead Law. (Ky. Stats., section 1705-1707.)

3. Value of homestead not always restricted to $1,000. (Turner's Gdn. v. Turner's heirs, 89 Ky. 583.)

4. Where the husband owned the homestead and dies, the homestead being worth more than $1,000 and indivisible, the land may be sold for the debts of the husband, but can only be sold subject to the right of the widow and infant children. (Loyd v. Loyd, 82 Ky. 524; Sansberry vs. Simms' Admrx., 79 Ky. 531.)

OPINION OF THE COURT BY JUDGE CARROLL— Reversing.

Charles T. Warren died, leaving surviving him a widow and infant children. At the time of his death, he owned a house and lot occupied as a homestead,

and worth about $3,500. It was not susceptible of division. This action was brought by his administrator to settle the estate of Warren, which was insolvent; and he asked that the house and lot be sold, and, after setting apart $1,000 as a homestead right to the widow and children, the remainder of the proceeds be applied to the payment of the debts due by the estate. The widow and children insisted that, under the statute, they had a right to occupy the homestead, and that it could only be sold subject to their right of occupancy. The court adopted this view, and adjudged "the defendant Nannie Warren, widow of Charles T. Warren, deceased, and their unmarried infant children, are entitled to the use and joint occupany of said property as a homestead during the life of said widow and until the youngest unmarried child of said Nannie and Charles T. Warren arrive at the age of 21 years, and that said property is indivisible, and the master commissioner is hereby ordered and directed to make the sale of the same subject to the above-mentioned rights of the widow and infant children." From this judgment, the administrator and creditors prosecute this appeal.

Section 1702 of the Kentucky Statutes of 1903 provides, in part, that "there shall be exempt from sale under execution, attachment or judgment, except to foreclose a mortgage given by the owner of the homestead or for purchase money due therefor, so much land including the dwelling house and appurtenances owned by debtors, who are actual bona fide housekeepers with a family resident in this Commonwealth, as shall not exceed in value one thousand dollars." Section 1703: "Before a sale under execution, attachment or judgment of land occupied as a homestead, the officer in whose hands the writ or judgment may

be shall cause such part thereof which may be select-ed by the defendant as shall not exceed in value one thousand dollars to be valued under oath and set apart to him by two disinterested housekeepers of the county.'' Section 1705: ''Where the defendant in the execution, attachment or action owns real es-tate which is levied on, or sought to be subjected to the payment of any debt or liability, and the same in the opinion of the appraisers is of greater value than one thousand dollars, and indivisible without great diminution of its value, then the same shall be sold under execution, attachment or judgment and one thousand dollars of t⠆⠄ money arising from the sale shall be paid to the defendant to enable him to purchase another homestead.'' Section 1707: ''A homestead shall be for the use of the widow so long as she occupies the same; and the unmarried children of the husband shall be entitled to a joint occupancy with her until the youngest unmarried child arrives at full age; but the termination of the widow's occu-pancy shall not affect the right of the children, but said land may be sold subject to the right of said widow and children if a sale is necessary to pay the debts of the husband.''

The first inquiry that naturally suggests itself is: What right or interest did the widow and children take under section 1707? Manifestly all they are en-titled to is the homestead that the husband could claim if living. If the husband had a homestead, upon his death his widow and unmarried infant chil-dren are allowed the use of it. They are not entitled to the use of $3,000 or $5,000 worth of property as a homestead, or any property exceeding in value $1,000. When $1,000 has been set apart to them for use and occupancy, they have received the full home-

stead right contemplated by the statute. In every section of the statute speaking of it, the homestead is limited to $1,000. Nowhere do we find any intimation that either the husband or widow or children are entitled to claim as a homestead property of greater value. It would be giving the statute a most unreasonable construction to hold that, although the husband could only claim property of the value of $1,000 for a homestead, that immediately upon his death his widow might be entitled to hold property of the value of $10,000 as a homestead. If the position maintained by counsel for appellee is correct, there is no limit upon the value of indivisible property that the wdow may hold as a homestead. If the husband at the time of his death occupied as a homestead a house worth $10,000, his widow and children, according to his argument, could hold the whole of it against his creditors as long as the widow occupied the same, or until the youngest unmarried child arrived at full age, notwithstanding the fact that the estate was insolvent and the property in excess of $1,000 necessary to pay the debts. As the widow and unmarried infant children only take the homestead the husband was entitled to, it comes to them in respect to its value subject to the conditions that attached to it before the death of the owner. If, during his life, he has a homestead right in indivisible property of the value of more than $1,000, the whole of the property is subject to sale under execution, attachment, or judgment, and out of the proceeds there must be paid to him $1,000. If he dies the owner of a homestead in this indivisible property that is worth more than $1,000, then the whole of the property may be sold under execution, attachment, or judgment, and $1,000 of the proceeds must

be set apart for the use of the widow and the un-
married infant children. This $1,000 may be invested
by order of court, or it may be loaned. In either
event, the widow and children have the right in the
property or its proceeds given by section 1707 and
the creditors of the husband if the $1,000 is invested
in property may sell the same subject to the right
of the widow and children. If not invested, the $1,000
must be so protected by the court as that the credit-
ors of the husband may secure the same after the
right of the widow and children in the income de-
rived therefrom has been extinguished. The sug-
gestion in Sansberry v. Simms, 79 Ky. 527, 3 Ky. Law
Rep. 303, apparently in conflict with the views herein
expressed, must be considered as dictum, not neces-
sary to a decision of the question before the court.

Wherefore the judgment of the lower court is re-
versed, with directions to enter a judgment in con-
formity with this opinion.


EXTENDED OPINION BY JUDGE BARKER, November 20,
1907.


The question of the widow's right to elect between
homestead and dower is not presented in this record.
The fact that she made a mistake as to her right to
occupy her husband's domicile as a homestead, al-
though it was worth more than one thousand dollars,
does not militate against her right to elect to take
dower in lieu of homestead after her right of home-
stead is properly defined and limited. When the case
returns to the circuit court she may elect between
homestead and dower. If she elects to take dower
she will be required to furnish a homestead for the

infant children to the extent of one thousand dollars out of it.   (Section 1726, Ky. Statutes.)