## Gibbs et al. v. Deins et al.

April 19, 1940.

William B. Ardery, Judge.

Polk South, Jr., for appellants.

L. B. Armstrong for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The appellant, Mrs. Julia Gibbs, a resident of Frankfort, Ky., while in the State of Ohio, signed as surety a note her son executed to Joseph Deins. When sued on that note in Kentucky in the Franklin Circuit Court, Mrs. Gibbs pleaded that she was a married woman at the time she signed same and under the provisions of Section 2127 of the Kentucky Statutes, she incurred no liability thereon. During the pendency of that action Deins died a resident of Ohio and the Capital Trust Company of Frankfort was named and qualified as his ancillary administrator in Kentucky, and

the action was revived and prosecuted in its name. The circuit court sustained the plea of coverture and Deins' ancillary administrator prosecuted an appeal to this court. We held that the contract of suretyship executed in Ohio was to be performed there, hence the Ohio law governed. As a married woman is liable on her contract of suretyship in Ohio, the case was reversed with directions to enter judgment against Mrs. Gibbs for the balance of $507.15 due on the note. That case is reported as Deins' Adm'r v. Gibbs, 257 Ky. 469, 78 S. W. (2d) 346.

After judgment was entered in the Franklin Circuit Court an execution was issued in the name of the Capital Trust Company, administrator of Deins, which on Aug. 31, 1937, was duly levied on a house and lot 50 by 105 feet located in Frankfort and owned and occupied by Mrs. Gibbs as a home. On Jan. 19, 1939, Bernard H. Deins and Max Friedman, the duly appointed and qualified domiciliary administrators of Joseph R. Deins under the laws of Ohio, instituted this action in equity in the Franklin Circuit Court against Mrs. Gibbs, her husband and the Home Owners Loan Corporation, which held a mortgage on her home, seeking to foreclose the execution lien. Mrs. Gibbs filed a special demurrer to the petition challenging the authority of the plaintiffs, the domiciliary administrators, to bring this suit. She contends that authority was vested in the ancillary administrator, the Capital Trust Company, which had merged with the Farmers Bank and was then and is now the Farmers Bank & Capital Trust Company. The court overruled this special demurrer and held the domiciliary administrators had the right and authority to maintain this action. Mrs. Gibbs and her husband by their answers pleaded that as Mrs. Gibbs was a married woman her property could not be subjected to the satisfaction of a judgment obtained against her on the suretyship obligation; that homestead should be allowed to her in this property; and Mr. Gibbs pleaded his right of courtesy therein. The Home Owners Loan Corporation by answer asked if the property be sold that the sale be made subject to its first mortgage.

The chancellor sustained a general demurrer to the answer of the Gibbs and they declined to plead further and judgment was entered directing a sale of this prop-

erty, subject to the mortgage of the Home Owners Loan Corporation, for the purpose of satisfying the execution lien. He further adjudged that the property was indivisible and that Mrs. Gibbs should have $1,000 set aside to her out of what the property brought above the first mortgage lien to be reinvested in a homestead for her, and curtesy be allowed her husband out of the proceeds received from the sale.

A reversal of the judgment is sought because: 1. The domiciliary administrators had no authority to maintain this action as the ancillary administrator had never resigned, been removed, or discharged upon making final settlement: 2. that no sale could be ordered of of this property until the court first determined whether Mrs. Gibbs would receive $1,000 in lieu of a homestead; 3. that the judgment rendered on a suretyship obligation could not be enforced against a married woman's property.

There is no reason advanced by either counsel in the briefs filed why the ancillary administrator did not institute this action, and it was not argued that any request was made of it to do so, or that it refused. Appellees argue that as this is an action to collect a debt due their decedent they are authorized to institute and maintain this action under Section 3878, Kentucky Statutes. This section does authorize foreign executors or administrators of persons who at the time of death were non-residents of this Commonwealth to maintain an action to collect debts due their decedent upon executing bond with surety resident in the county where the action is brought. Section 3879 provides for the filing of duly authenticated letters of administration by the foreign administrator, and Section 3880 reads:

"If there be an executor or administrator of such decedent qualified by a court of this Commonwealth, he alone shall have power to sue; but any debtor who shall pay his debt, or part of it, according to the provisions of the foregoing sections, without notice thereof, shall be discharged to the extent of such payment."

There can be no doubt that Section 3880 excludes foreign executors or administrators from bringing suit in this State if there be an executor or administrator qualified by a court of this Commonwealth. Construing

these three sections of the Statutes together, it is clear to us that where an ancillary administrator has qualified in Kentucky, no foreign administrator may bring a suit even to collect a debt due his decedent. It was held in Conner's Adm'x v. Paul, 12 Bush 144, 75 Ky. 144, that a foreign executor or administrator could not maintain an action in this State if there be an executor or administrator qualified by a court of this State. That case cites General Statutes, Section 45, which upon investigation we find to be the General Statutes of 1873; Sections 43-45 of those statutes are identical with Sections 3878-3880 in the present statutes.

The court erred in overruling the special demurrer challenging the authority of the domiciliary administrators to maintain this action and for this error the judgment must be reversed.

We find no merit in the other two contentions made by appellants. It is not seriously argued that homestead could be allotted Mrs. Gibbs under Section 1703, as her home consists of a valuable house on a small, town lot. But Mrs. Gibbs contends that the property should have been appraised before the sale was ordered to determine under Section 1705 of the Statutes whether this indivisible property would bring $1,000 over the first mortgage lien, since the property was ordered sold subject to that lien. An appraisal would have been useless since Section 1705 provides where there is a homestead in indivisible property there shall be no sale of such property to satisfy an execution if when offered for sale it does not bring more than $1,000. It is manifest that as the judgment directed $1,000 of the sale price above the first mortgage should be reinvested in a homestead for Mrs. Gibbs, the chancellor will confirm no sale of the property which does not bring $1,000 above the first mortgage. Here the property is indivisible and the debtor has a right to homestead, therefore the chancellor correctly ordered it sold with the directions that $1,000 over and above the first lien be reinvested in a homestead for the debtor. Thompson v. Thompson, 105 S. W. 1185, 32 Ky. Law Rep. 319; Warren v. Warren, 126 Ky. 692, 104 S. W. 754, 1199, 31 Ky. Law Rep. 1101.

Mrs. Gibbs argues that to enforce this judgment against her property would contravene the public policy of Kentucky in that in doing so a married woman's

property would be taken to satisfy her suretyship obligation. She pleaded the Married Woman's Act (Kentucky Statutes, Section 2127), in defense of the suit on the note, and we decided she was liable on the Ohio contract, Deins' Adm'r v. Gibbs, 257 Ky. 469, 78 S. W. (2d) 346, and that question is now res adjudicata and cannot be raised in this action. Wren v. Ficklen, 109 Ky. 472, 59 S. W. 746, 22 Ky. Law Rep. 1035; Bush v. Arnett, 271 Ky. 803, 113 S. W. (2d) 442. As was said in the Wren case, if Mrs. Gibbs' property cannot be subjected to the satisfaction of the judgment, the judgment is of no value and it was idle to obtain it.

The judgment is reversed.